# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michelle A. Bankes,        :
            Petitioner     :
                     :
       v.               :   No. 184 C.D. 2014
                     :   Submitted: July 18, 2014
Unemployment Compensation   :
Board of Review,           :
            Respondent   :

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
              HONORABLE MARY HANNAH LEAVITT, Judge
              HONORABLE P. KEVIN BROBSON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED: August 27, 2014**

Petitioner Michelle A. Bankes (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed the Unemployment Compensation Referee's decision, which denied Claimant unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law),[1] relating to voluntary separation without cause of a necessitous and compelling nature. For the reasons set forth below, we affirm.

Claimant filed for unemployment compensation benefits after voluntarily quitting her position as a part-time therapeutic staff support at Jeffrey

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

Fremont Ph. D. (Employer). The Scranton UC Service Center (Service Center) issued a Notice of Determination, finding Claimant ineligible for benefits under Section 402(b) of the Law. (Reproduced Record (R.R.), Item No. 2.) The Service Center reasoned that Claimant failed to exhaust all other alternatives prior to voluntarily quitting. (*Id.*) Claimant appealed the Service Center's determination, and a Referee conducted an evidentiary hearing.

Claimant testified that she worked between 30 and 35 hours per week for Employer. (R.R., Item No. 4 at 13a.) Her normal work hours were from 9:00 a.m. to 3:00 p.m. (*Id.* at 16a.) Claimant explained that her stepbrother informed her that he would no longer be able to watch her children while she worked, and, consequently, Claimant informed Judy Simon-Long (Behavior Specialist Consultant for Employer) that she could not continue working. (*Id.* at 14a-16a.) When the Referee asked whether she looked into possibly taking her children to daycare, Claimant said she did not, because she used to work at a daycare, and she knew that daycare was "pretty expensive." (*Id.* at 17a.) Claimant stated that the cost of daycare would cost around $500 a month per child, and she noted that her stepbrother watched her children for free. (*Id.*) She explained that her husband was unavailable to watch the children because he also works the day shift, and other family members were also unavailable to watch her children. (*Id.*) Claimant testified that after she spoke with Ms. Simon-Long, Employer did not contact her or offer any alternatives in order to accommodate Claimant's new availability. (*Id.* at 14a.) Claimant also testified that she was aware that Employer did not offer a second or third shift. (*Id.* at 15a.)

Jane Andrews, Practice Manager for Employer, was Employer's first witness. Ms. Andrews testified that the availability of work hours is "all case

2

dependent." (*Id.* at 19a.) When asked by Claimant's counsel whether Ms. Andrews ever contacted Claimant, Ms. Andrews stated that she did not, explaining:

> It was a verbal notice given to Judy [Simon-Long] who passed it along to me. [Therapeutic staff support] workers don't stay in their positions for long periods of time. They're usually teachers, people with a psychology major who are in [therapeutic staff support] because they can't find a job and they're here until they find better work. I know that. So I don't take it personally when someone gives their notice. I assume—and we all know what happens if we assume—but I assume they're going on to better things.
>
> . . . .
>
> [W]hen someone gives their [sic] notice I don't feel it's my job to find out why. She didn't come in with a complaint.

(*Id.* at 20a-21a.)

Ms. Simon-Long also testified on behalf of Employer. She testified that after Claimant informed her that she could no longer work, Ms. Simon-Long told her to contact the office to see if there were alternative hours available. (*Id.* at 22a.) Contrary to what Ms. Andrews testified to, Ms. Simon-Long stated that there are sometimes different hours available based on changes in client availability. (*Id.*) Ms. Simon-Long stated that she was not positive as to whether Claimant ever contacted the office. (*Id.* at 23a-24a.)

Following the hearing, the Referee issued a decision and order affirming the Service Center's determination. (R.R., Item No. 9.) The Referee made the following findings of fact:

> 1. The claimant was employed by Jeffrey Fremont PHD as a therapeutic staff support with a final rate of pay of $15.50 per hour on a part-time basis with the

3

claimant working between 30 and 35 hours per week[,] having begun her employment on December 10, 2012.

2. The claimant's last day of work was August 23, 2013.

3. On August 5, 2013, the claimant told her supervisor[,] the behavioral services consultant[,] that she had lost her babysitter and that she was quitting her employment.

4. The behavioral services consultant told the claimant she should speak with Jane Andrews[,] the practice manager.

5. At the time that the claimant informed her supervisor, the behavioral services consultant, that she had a childcare issue, she also told her she was quitting her employment.

6. The claimant did not discuss the situation with the practice manager who acts as the HR person for the employer.

7. The claimant did not exhaust all alternatives prior to quitting.

(R.R., Item No. 9.) The Referee determined that Claimant voluntarily terminated her employment and failed to show cause of a necessitous and compelling nature for doing so. (*Id.*) The Referee explained that "it is the responsibility of the claimant to take steps to maintain the employer/employee relationship[,] and simply telling the employer that she lost her babysitter and that she was quitting as a result of it does not meet the requirements for maintaining the employer/employee relationship." (*Id.*)

Claimant appealed to the Board, which affirmed the Referee's decision and order. (R.R., Item No. 14.) In so doing, the Board adopted and incorporated the Referee's findings and conclusions, adding:

4

[T]he Board finds that the claimant quit her employment due to a change in childcare. The Board also finds that the claimant did not investigate other alternatives including the cost of daycare, the cost of other babysitters, or whether short-term leave was available to her. Further, the claimant presented insufficient credible evidence to show that any other childcare arrangement was unaffordable. Finally, the Board finds credible the employer's testimony that it informed the claimant that she should contact the practice manager to ascertain whether other shifts, work schedules or decreased hours would be available to her. However, the claimant did not contact the practice manager and did not request an accommodation.

(R.R., Item No. 14.) Claimant now petitions this Court for review.

On appeal,[2] Claimant essentially argues that the Referee's findings of fact, as adopted and incorporated by the Board, were not supported by substantial evidence of record. Specifically, Claimant challenges finding of fact number seven, which provides: "The claimant did not exhaust all alternatives prior to quitting." (R.R., Item No. 9.) In support of her argument, Claimant states that Employer never contacted her in an effort to provide her with alternative work options. Further, Claimant contends that she has provided a necessitous and compelling reason for terminating her employment as evidenced by "the employer['s] refus[al] to review and provide any alternative in accordance with testimony that they did not care to work with the Petitioner under any circumstance." (Petitioner's Br. at 13.)

---

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

Section 402(b) of the Law provides, in part, that a claimant shall be ineligible for compensation for any week in which the claimant's "unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review. *Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 661 (Pa. Cmwlth. 2006). A claimant who voluntarily quits his employment "bears the burden of proving that necessitous and compelling reasons motivated that decision." *Fitzgerald v. Unemployment Comp. Bd. of Review*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998), *appeal denied*, 794 A.2d 364 (Pa. 1999). To establish cause of a necessitous and compelling nature, a claimant must establish that (1) circumstances existed that produced real and substantial pressure to terminate employment, (2) like circumstances would compel a reasonable person to act in the same manner, (3) the claimant acted with ordinary common sense, and (4) the claimant made a reasonable effort to preserve his employment. *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008).

Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in a light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The

6

Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984).

In an unemployment compensation case, it is well-settled that the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1388 (Pa. 1985). The Board is also empowered to resolve conflicts in the evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). "Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Peak*, 501 A.2d at 1388.

Here, the record, including Claimant's own testimony, reveals that she did not make a reasonable effort to preserve her employment. Ms. Simon-Long told Claimant that she should look into the possibility of only working for a few hours during the day, but Claimant provided no evidence showing that she did so. Claimant asserted that she felt that she "[had no] choice but not to go to work," because Employer never contacted her to make any accommodations. (R.R., Item No. 4 at 14a.) Employer's failure to contact Claimant in order to provide her with alternative options, however, is immaterial for two reasons: (1) the burden is on Claimant, not Employer, to make a reasonable effort to preserve her employment; and (2) the Board found Employer credible in its testimony that Ms. Simon-Long told Claimant to contact Employer's office to "ascertain whether other shifts, work schedules or decreased hours would be available to her," but Claimant failed to do so. (R.R., Item No. 8.) Essentially, Employer, through Ms. Simon-Long, did

7

suggest a possible alternative to Claimant, but Claimant chose not to pursue it. Thus, a review of the record as a whole and in a light most favorable to Employer, as the prevailing party, shows that substantial evidence does support the Referee's finding, as adopted by the Board, that Claimant failed to exhaust all alternatives prior to quitting. Thus, Claimant did not make a reasonable effort to preserve her employment. Claimant, therefore, failed to show that she terminated her employment for a cause of a necessitous and compelling nature.

Accordingly, we affirm the order of the Board.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michelle A. Bankes,                                  :
                           Petitioner                :
                                                     :
            v.                                       :      No. 184 C.D. 2014
                                                     :
Unemployment Compensation                            :
Board of Review,                                     :
                           Respondent                :

# **O R D E R**


AND NOW, this 27th day of August, 2014, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.


_____
P. KEVIN BROBSON, Judge